**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-00048-MSK-KLM

**DALE P. ARMELIN,**

    **Plaintiff,**

**v.**

**PATRICK R. DONAHOE, Postmaster General; and
UNITED STATES POSTAL SERVICE,**

    **Defendants.**

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION IN LIMINE**

---

**THIS MATTER** comes before the Court pursuant to the Defendants' ("USPS") Motion
In Limine (**# 177**), and Mr. Armelin's response (**# 179**). The Court does not deem a reply
necessary. *See* D.C. Colo. L. Civ. R. 7.1(d).

The Court assumes the reader's familiarity with the issues presented in this case and the
proceedings to date.

**A. Adverse employment actions**

USPS moves to preclude the admission of evidence relating to Mr. Armelin's contention
that being "subjected to increased scrutiny, criticism, and the compiling of negative reports"
constitutes a separately-actionable adverse employment action sufficient to support Mr.
Armelin's claim for retaliation. USPS argues that: (i) Mr. Armelin did not administratively
exhaust any claim of retaliation premised on increased supervision; and (ii) that, as a matter of

law, being subjected to increased supervision cannot constitute an actionable adverse employment action.

It is well-settled that federal employees must raise any allegation of unlawful discrimination or retaliation within 45 days of the unlawful act by contacting the agency's EEO counselor. *Green v. Donahoe*, ___ F.3d ___, 2014 WL 3703823 (10th Cir. Jul. 28, 2014), *citing* 29 C.F.R. § 1614.105(a)(1). If initial counseling fails to resolve the issue, the employee must file a formal charge with the agency within 15 days of being notified of the conclusion of the counseling. *Id.*, *citing* 29 C.F.R. § 1614.106. The agency then investigates the charge and issues a determination. 29 C.F.R. § 1614.108. The employee may obtain review of an adverse determination through further administrative proceedings through the EEOC, or may instead elect to pursue judicial remedies under Title VII. *Green*, *id.*, *citing* 42 U.S.C. § 2000e-16(c). The claim asserted in any subsequent judicial proceeding must fall "within the scope of the administrative investigation that could reasonably be expected to follow from the allegations raised in the charge" -- in other words, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.*, *citing Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). In the 10th Circuit, an employee's failure to exhaust the agency's administrative process operates as a jurisdictional defect precluding court consideration of the unexhausted claim. *Id.*, *citing Jones v. Runyo*, 91 F.3d 1398, 1399 (10th Cir. 1996).

Here, the parties apparently agree that the operative administrative charge filed by Mr. Armelin is the one signed by him on October 8, 2006 (Charge No. 4E-800-0247-06). The narrative portion of that charge consists of six typewritten pages. The first paragraph identifies the specific employment actions Mr. Armelin complains of: "On June 30, 2006, I was put on Emergency Placement In a Without Pay Status . . . for two alleged offenses. On July 24, 2006, I

was given a Notice of Removal for these two same offenses."  The remainder of the document discusses, in some detail: (i) a June 28, 2006 confrontation with Paul Corbeil, Mr. Armelin's supervisor, over whether Mr. Armelin improperly left keys inside a truck, (ii) a June 28, 2006 confrontation between Mr. Armelin's and another supervisor, Abe Payton, over Mr. Payton's instruction that Mr. Armelin "finger mail" while walking his route and Mr. Armelin refusing to do so, as that "violat[ed] postal safety guidelines"; and (iii) discussion of a June 30, 2006 disciplinary notice for making a U-turn in his truck.

The USPS then sent Mr. Armelin an "Acceptance for Investigation" letter, noting that the "specific issues" raised in his charge were ". . . retaliation (prior EEO activity) when: 1) on June 30, 2006 you were placed on Emergency Placement without Pay Status; and 2) on July 24, 2006 you were issued a Notice of Removal."  The letter stated that "if you do not agree with the defined accepted issues, you must provide a written response specifying the nature of your disagreement within seven calendar days."  The record does not reflect that Mr. Armelin disputed the USPS' interpretation of his charge.

Based on this record, the Court cannot say that Mr. Armelin adequately exhausted a distinct contention that he was retaliated against by the USPS engaging in "increased scrutiny, criticism, and the compiling of negative reports" beyond the negative disciplinary reports specifically addressed in the charge.  Assuming – without necessarily finding – that being subjected to increased supervisory observation and criticism can constitute an adverse action sufficient to support a retaliation claim, Mr. Armelin's narrative recites several specific instances of allegedly retaliatory discipline, but gives no suggestion that he is also complaining about a more nebulous campaign of "increased scrutiny [and] criticism" beyond those specific events. He does not, for example, identify any instances in which his supervisors accompanied or

followed him on routes in ways they did not normally do for others, or that they reviewed his time cards or work logs in atypical ways.   No reasonable reading of the six-page narrative statement permits a conclusion that Mr. Armelin was attempting to complain about a broader campaign of "increased scrutiny" as compared to certain specific instances of actual discipline imposed upon him.

Mr. Armelin argues in response to the motion that a single passage in his charge indicates that he raised this issue.  That passage states that he has filed numerous charges against Mr. Payton since 2004, and that "ever since then, Payton *has striven to manufacture a case for my termination* and I have filed seven additional charges for retaliation as a result of his actions." (Emphasis added.)   Nothing in this passage is susceptible to an interpretation that Mr. Armelin is necessarily referring to "increased scrutiny [and] criticism" by this language.  To the extent that Mr. Armelin's charge offers any explanation of what he means by Mr. Payton "striv[ing] to manufacture" grounds for termination, that explanation would be embodied by the "seven additional charges" Mr. Armelin filed against Mr. Payton.  By definition, claims arising from those seven prior instances of alleged retaliation would have to be separately exhausted and alleged in this action, but nothing in the record in this case indicates that Mr. Armelin is raising any discrete instances of conduct other than those enumerated above and recited in the Acceptance for Investigation letter.  Moreover, nothing in Mr. Armelin's charge suggests that he is complaining about, much less that the USPS understood him to complain of, a campaign of "increased scrutiny" that did <u>not</u> result in actual discipline.  If anything, the most plausible reading to be given to this passage is that Mr. Payton's "striv[ing] to manufacture a case for [Mr. Armelin's] termination" is simply that Mr. Payton repeatedly issued unjustified disciplinary notices against Mr. Armelin, such as those specifically discussed in the narrative.  Thus, the

Court finds that Mr. Armelin failed to adequately exhaust any contention that he was subjected to "increased scrutiny [and] criticism" as an adverse action separate from the specific discipline imposed upon him in June and July 2006.[1]

Having so found, the Court does not intend to instruct the jury that they may find a verdict in favor of Mr. Armelin if they find that the USPS stepped up its supervision of him in retaliation for his EEO complaints; rather, Mr. Armelin must prove that the specific instances of discipline imposed against him in June and July 2006 were retaliatory.  It may be permissible for Mr. Armelin to testify that he believed that his supervisors were more active in their supervision of him after his EEO complaints than they had been before, or that the criticism of his work increased to an atypical level after such complaints, as such testimony may be circumstantial proof of a retaliatory intent on the part of the supervisors or may suggest that the discipline imposed on Mr. Armelin was pretextual.  However, that determination will necessarily await the proffer of specific evidence, in context, at trial and a timely objection by the USPS to the relevance of such testimony.

### B.  Vacatur of termination

Mr. Armelin challenged his July 2006 termination through the collective bargaining agreement's grievance procedure.  In October 2006, a "Dispute Resolution Team," consisting of a USPS representative and union representative, concluded that the USPS lacked "just cause" for the termination under the contract.  Specifically, the Team concluded that there was insufficient evidence of "a rule or regulation (Postal or Civil) that prohibits U-turns," and that the discipline

---

[1]      Even assuming the matter was sufficiently exhausted by Mr. Armelin in the administrative process, the Court finds that his suggestion that the claim is now cognizable as a retaliatory hostile environment claim is inconsistent with the scope of the Pretrial Order, which makes no mention whatsoever of such a claim.  The elements of a retaliatory hostile environment claim are significantly different than those of a retaliation claim premised on a discrete act, and the Pretrial Order recites only the latter.

imposed on Mr. Armelin for leaving his key in the ignition while working outside the truck was not a violation of the rule nominally cited by the USPS (although it may have constituted a violation of a different rule).  The Team ordered that "the disciplinary action will be removed from all files and records immediately upon receipt of this decision."

The USPS moves to exclude evidence relating to the decision of the Dispute Resolution Team, arguing that: (i) the written decision is hearsay, (ii) it is irrelevant; and (iii) if relevant, it is unduly prejudicial.  Mr. Armelin contends that the decision is admissible, relevant, and sufficiently probative.

Although the Court has some doubt as to whether the Team's written decision constitutes inadmissible hearsay, it need not reach that question because it finds that the fact of the decision (*c.f.* the documentary exhibit) is relevant and undisputed, and thus, properly established as a stipulated fact.

The decision – that Mr. Armelin's conduct did not violate the USPS policies cited in the disciplinary notices – is relevant.  The essential question in a retaliation claim of this type is whether the legitimate reasons given by the employer for the adverse action are false and a pretext for retaliation.  *See generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993).  A determination by the factfinder that the nominally-legitimate reason proffered by the employer for the adverse action is false can be sufficient, in and of itself, to permit the inference that the true reason was retaliation.  *Id.*  Thus, a determination by the Dispute Resolution Team that Mr. Armelin's conduct did <u>not</u> violate USPS policy could be said to be evidence that the USPS' stated reason for that termination is false and thus, arguably probative as to the question of pretext.

Ordinarily, the Court might agree with the USPS that arbitral decisions overturning discipline are not relevant or present an undue risk that the arbitrator's findings will prejudice the jury's determination, but the situation presented here differs from an arbitration decision made by a neutral third-party.  The Dispute Resolution Team is not a neutral arbitrator rendering an opinion; rather, it is a joint union-management grievance adjustment team, including a representative of the USPS.  The language of the decision references the Team "mutually agree[ing]" to "resolve this grievance."  Rather than being a third party's mere opinion about a matter, the decision reflects the USPS, through its agent, agreeing to certain matters.  The USPS agent agreed that the disciplinary violations contained in the notices issued to Mr. Armelin were, in fact, not violations of USPS policy.  This admission is binding on the USPS; it cannot now contend in that the alleged violations justified termination.[2]

That being said, the Court sees no reason why the decisional document itself must be admitted as an exhibit.  It is undisputed that a joint union/management grievance team overturned Mr. Armelin's termination in October 2006 and ordered the June 2006 disciplinary notices purged, finding that his conduct did not violate established rules of the USPS.  The Court expects that the parties will craft a stipulation of fact that will ameliorate the need for presentation of testimonial or documentary evidence on this point.  *See* Fed. R. Civ. P. 11(b)(4).  Accordingly, the Court grants in part and denies in part the USPS' motion seeking to exclude evidence of the Team's decision.

---

[2]      The USPS can, of course, argue that the supervisor issuing the notices believed in good faith that the discipline was warranted, or that the policies at issue are ambiguous or subject to differing reasonable interpretations.  And it can argue that, even if the discipline was improperly imposed, the jury should not infer any retaliatory motive.  And, it can always argue that Mr. Armelin's claimed damages are overstated or not causally connected to the discipline.

### C.  Undisclosed witnesses

The USPS seeks to preclude Mr. Armelin from calling five witnesses[3] on the grounds that Mr. Armelin failed to disclose those witnesses in his Rule 26(a) disclosures.   Mr. Armelin concedes that the witnesses were not properly disclosed, but argues that the nondisclosure was "substantially justified or harmless."

Fed. R. Civ. P. 37(c)(1) sets forth a presumptive sanction for a party's failure to identify a witness in its Rule 26(a)(1) disclosures: "the party is not allowed to use that . . . witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Whether a failure to disclose is harmless and/or justified turns on the interplay of several factors, including: (i) the prejudice or surprise to the other party; (ii) the ability of that party to cure the prejudice; (iii) the extent to which introducing the testimony would disrupt trial; and (iv) the moving party's bad faith or willfulness.  *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1129-30 (10th Cir. 2011), *citing Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Mr. Armelin has made a *prima facie* showing on each of the four factors, stating that: (i) there is little prejudice to the USPS, as two of the three witnesses are its own employees and the third is the author of a document that was considered during the administrative proceedings on Mr. Armelin's charge, and that, in any event, the USPS chose not to conduct any discovery in this case; (ii) the USPS could readily have cured the prejudice at any time since the initial disclosure of the witnesses, some of whom were disclosed as early as January 2014 (Ms. Gaynor) and others were, according to Mr. Armelin, identified "more than six months ago," by independently interviewing them; (iii) that the witnesses' testimony will not disrupt trial, as each will be called only for brief periods of time; and (iv) that Mr. Armelin's failure to disclose them

---

[3]      Mr. Armelin subsequently conceded that two of the five will not be called at trial.

in his Rule 26 disclosures was inadvertent and a result of his *pro se* status.  The USPS's motion does not offer any anticipatory response on any of these factors.

Accordingly, the Court will defer ruling on this aspect of the motion until such time as Mr. Armelin notifies the Court, in advance, of his intention to call any of these witnesses.  At that time, the USPS may make a proffer as to each of the four *Woodworkers* factors.  The Court will then determine whether Mr. Armelin's failure to disclose was substantially justified and/or harmless and whether the witness may be called.

### D.  Punitive damages

Finally, the USPS moves to preclude any argument or instruction to the jury on the availability of punitive damages against it, arguing that it is a federal agency against whom such damages may not be awarded under 42 U.S.C. § 1981a(b)(1) ("a complaining party may recover punitive damages under this section against a respondent other than a government, government agency, or political subdivision . . .)."  Mr. Armelin argues that, by law, the USPS is "a free-standing enterprise" that is independently-managed and receives no taxpayer funds.

Numerous courts have addressed this issue and concluded that the USPS is a governmental agency and thus immune from awards of punitive damages in Title VII cases.  *See Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998); *Baker v. Runyon*, 114 F.3d 668, 669-72 (7th Cir. 1997); *Oakstone v. Postmaster General*, 397 F.Supp.2d 48, 58-59 (D.Md. 2005); *Mathirampuzha v. Potter*, 317 F.Supp.2d 159, 163-64 (D.Conn. 2005); *Prudencio v. Runyon*, 3 F.Supp.2d 703, 706-07 (W.D.Va. 1998).  The Court finds the reasoning in these cases to be thorough and persuasive, and indeed, finds it can add little more to this thorough body of law.  Mr. Armelin, on the other hand, cites to no cases standing for the proposition that punitive damages are available against the USPS under Title VII, and the sporadic cases holding as much

are persuasively addressed in the decisions cited above.   Accordingly, the Court will not instruct the jury that they may award punitive damages.

For the foregoing reasons, the USPS' Motion in Limine (**# 177**) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Dated this 6th day of August, 2014.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge